# SAMUEL & STEIN

ATTORNEYS AT LAW

38 WEST 32ND STREET, SUITE 1110, NEW YORK, NY 10001
PHONE: (212) 563-9884 | FAX: (212) 563-9870 | WEBSITE: www.samuelandstein.com

| DAVID STEIN | February 5, 2019 | ADMITTED IN |
|---|---|---|
| dstein@samuelandstein.com | | NY, NJ, PA, IL, DC |

**VIA ECF**

Hon. Stewart D. Aaron, U.S.M.J.
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 11C
New York, NY 10007

    Re:    **Baten v. St. Mina NSYJ Inc., d/b/a La Trattoria., et al.**
              *Case Number 18-cv-3248 (SDA)*

Dear Magistrate Judge Aaron:

      We represent plaintiff Fernando Baten in the above-captioned matter and submit this letter to the Court with the consent of Ken Maeng, Esq., counsel for defendants St Mina NSYJ Inc. and Sarwat Said, in accordance with the Court's Order of January 23, 2019, for the Court's assessment of and approval of the settlement agreement reached by the parties. The Settlement Agreement, executed by the parties, is being submitted contemporaneously with this letter as Exhibit A, and the parties submit that the Court should approve the settlement agreement and dismiss the case with prejudice _against those defendants only_ because the settlement is a fair resolution of this matter, negotiated in an arm's length negotiation between experienced counsel. (As described later in this letter, we will dismiss claims against the other defendants *without* prejudice.)

Background

      Plaintiff filed his complaint in this matter on April 13, 2018. The complaint asserts causes of action pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for minimum wage and overtime violations, as well as claims solely under the New York Labor Law for failure to pay "spread of hours" pay and failure to provide wage notices and failure to provide wage statements.

      Specifically, Mr. Baten has alleged that he was employed as a delivery person at defendants' pizzeria for approximately 18 months, from October 2016 to March 24, 2018. In addition to his delivery duties, he had cleaning and dishwashing duties inside the restaurant. He alleges that through roughly July 2017 he worked 90 hours per week, and that thereafter he worked 75 hours per week. Originally he was paid a salary of $515 per week for the 90 hours, but when his schedule was cut, his pay rate was changed to an hourly rate -- $7.50 per hour in 2017, and $8.00 per hour in 2018. He was paid in cash with no paystubs throughout his employment, but — at least beginning in August 2017 — defendants were tracking his time with time cards.

Mr. Baten also alleged that he was not given the wage notices required by the Wage Theft Prevention Act.

Based on these facts, Mr. Baten calculated his total estimated damages at $150,000, which was comprised of $130,000 in actual and liquidated minimum wage and overtime damages under the NYLL, $11,000 for failure to pay spread of hours pay, and $10,000 for defendants' violations of the Wage Theft Prevention Act for failing to provide wage notices or paystubs. Of that substantial figure, however, only $40,000 in actual and liquidated damages would have been recoverable under the Fair Labor Standards Act.[1]

Settlement Agreement

As the Court is presumably aware from presiding over settlement discussions – and as can be seen from the Settlement Agreement submitted herewith – the parties agreed to settle plaintiff's claims against defendants for a total of $35,000. While the final settlement amount is less than plaintiff's maximum possible recovery, we believe this to be a fair resolution to this matter, due to *bona fide* disputes about the value of his claims and to the risks attendant with continuing the litigation.

Defendant Sarwat Said contended (and plaintiff does not dispute) that his involvement with the pizzeria began in August 2017. However, at the time Mr. Baten brought the suit, he believed that Said and St. Mina NYSJ Inc. might be liable for damages for the entire 18 months of his employment, on a theory of successor liability predicated largely on the belief that there was substantial continuity of ownership even after Said's involvement commenced. After discovery, however, we decided that such a theory was not tenable. There is documentary evidence of a complete break in operations between the old Tawadrous ownership group and the Said/St. Mina defendants' ownership, as well as apparently credible deposition testimony from Said. We are familiar with the various tests employed for successor liability in this circuit, and we do not believe we would be able to meet that burden. As such, we decided to focus only on the time period from August 2017 to March 2018, for which the defendants St Mina NSYJ Inc. and Sarwat Said were indisputably on the hook.

For that shorter time period, Mr. Baten's damages would be significantly lower. Specifically, we calculated his maximum possible damages for that time period, based in part on credible employment records in defendants' position, as follows: $21,000 in actual and liquidated minimum wage and overtime damages under the NYLL, $4,400 for failure to pay spread of hours pay, and $10,000 for defendants' violations of the Wage Theft Prevention Act for failing to provide wage notices or paystubs.

---

[1] This discrepancy in monies recoverable under the FLSA vs. NYLL stems from the fact that the NYLL's Hospitality Wage Order provides that when an employee is paid a salary (rather than an hourly rate), the employee's salary is deemed to cover only the first 40 hours of the employee's work; he is then entitled to time-and-a-half the effective overtime rate for all overtime hours, rather than just a 50% half-time premium.

Even for Mr. Baten to recover that figure, he would have to establish that defendants were not entitled to take advantage of the "tip credit," and he would further have to convince a fact finder that the unsigned Wage Theft Prevention Act wage notices in defendants' possession had never been given to him; defendants claimed that they had tried but he refused to sign them. Aside from these trial risks, Mr. Baten faced the practical risk of non-collectability. Defendants operated a business that operated in significant part in cash, and we had not identified any assets for the individual defendant.

By agreeing to settle at this juncture, Mr. Baten was able to gain a significant portion of what he could have recovered at trial, while saving expenditures for depositions and trial, and without the delay of waiting for trial or the risks attendant with trial. And because collectability is a concern, litigation delays – not to mention costs incurred by defendants in defending themselves – could have significantly impaired his ability to recover more money, regardless of his success at trial. Thus, Mr. Baten decided to accept defendants' offer.

In addition, the Settlement Agreement here is only with the defendants St Mina NSYJ Inc. and Sarwat Said; it does not prejudice Mr. Baten's claims against the Tawadrous defendants. Because we now know that the Tawadrous defendants did not have any involvement with the business at the time the suit was filed, we determined that the putative service of process on them was not valid. Therefore, Mr. Baten intends to dismiss his claims against these other defendants *without* prejudice, and to proceed separately against them.

## FLSA Settlement Approval

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id*. at 336. (Citations omitted.) Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted).

Applying these factors, plaintiff suggests that they weigh in favor of settlement approval. The total gross settlement amount is basically equal to plaintiff's maximum possible recovery (based on our current understanding of the facts). And even after attorneys' fees, plaintiff will be receiving complete recovery of his claimed actual FLSA damages, as well as 100% of liquidated damages. He will receive these funds without running any risk or having to prove his claims. Settlements resulting in a much lower percentage of potential recovery are routinely approved. *See, e.g., Redwood v. Cassway Contracting Corp.*, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (net settlement of 29.1% of FLSA plaintiff's maximum recovery is reasonable); *Beckert v. Ronirubinov*, 2015 WL 8773460, at *2 (S.D.N.Y. Dec. 14, 2015)(25% of potential recovery reasonable); *Larrea v. FPC Coffees Realty Co.*, 2017 WL 1857246 at *2 (S.D.N.Y. May 5, 2017)(net settlement of 43% of FLSA plaintiff's maximum recovery is reasonable). And although this settlement agreement calls for installment payments, Mr. Baten is protected by a confession of judgment for 150% of the settlement amount.

The settlement will also enable the parties to avoid the delay, burdens and expenses of trial, as well as the litigation risks that always accompany same. Courts consider settlements fair and reasonable when, as is the case here, they take into account the potential risks of litigation. See e.g., *Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, inter alia, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc.*, 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiff and Defendants were represented by counsel experienced in wage and hour law.") In this case, counsel for plaintiff are experienced wage-and-hour litigators, and because the settlement negotiations in this case were presided over by the Court, Your Honor has firsthand knowledge that the negotiations were conducted on an arm's length basis. Moreover, prior to entering into the settlement agreement, Mr. Baten, in consultation with counsel, thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks

Finally, other factors present do not weigh against a settlement. Plaintiff no longer works for defendants, so there is no risk he will be subject to the same treatment in the future. There are no other parties to this case who will be affected by this settlement. Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

Pursuant to counsel's retainer agreement with plaintiff, we will be reimbursed for out-of-pocket expenses of $1,756.65 (filing fee, service of process, deposition costs, interpreter fees, and

subway)[2] and will retain 1/3 of the net settlement (i.e., an additional $11,081.12) as attorneys' fees. Based on our experience in handling FLSA matters, this is a standard arrangement in this District, and is routinely approved by courts in this Circuit. See, e.g., *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 U.S. Dist. LEXIS 144446, *21 (E.D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); *Cortes v. New Creators, Inc.*, 2016 WL 3455383, at *5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with `contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (quoting *Najera v. Royal Bedding Co.*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015)); *Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (finding that where, as here, the fee award is consensual since "Plaintiff has explicitly approved the agreement, including the amount of fees to her counsel" the award should be approved); *see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 n.4 (2d Cir. 2007) ("any attorney's fee ultimately belongs to [plaintiff], the client, and not the attorney," and courts "assume[s] the attorney and client will settle the distribution of the attorney's fees . . . according to their own contract terms, which are beyond the province of this Court") (citations omitted). Moreover, it represents an attorneys' fee amount of approximately 59% of our lodestar, a figure far below those commonly approved in FLSA contingency litigation. *Pucciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029 at *2 (E.D.N.Y., June 23, 2017) ("Courts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements.")(citing cases); *Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014)(approving a multiplier of 2.28 and noting that a "multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.")

While we are applying for a percentage of the recovery as is common in FLSA cases, we believe that our lodestar cross-check figure is reasonable; it was calculated as follows:

| Attorney | Class | Rate[3] | Hours | Total |
|---|---|---|---|---|
| David Stein | Senior Partner | $400 | 21.10 | $7,765.00 |
| David Nieporent | Senior Associate | $325 | 33.70 | $10,952.50 |
| **TOTAL** | | | **54.80** | **$18,717.50** |

A copy of our time records, maintained contemporaneously and entered into Timeslips software, is attached in support of these figures as Exhibit B. I am a founding partner of Samuel & Stein, I have been practicing law since 1990, have been admitted in the state of New York since 2000, and I have been focusing my practice almost exclusively on wage-and-hour cases since 2008, serving as counsel of record in more than 350 such cases. In addition to being admitted in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan, I am admitted to practice in Illinois, Pennsylvania, New Jersey, and the District of Columbia. My senior associate, David Nieporent, has been practicing law since 2001 and has been admitted to

---

[2] The Court can take judicial notice of the filing fee; receipts for service of process, translator fees, and deposition charges are attached as Exhibit C.

[3] A handful of basic tasks that did not require the expertise of a senior partner were billed at just $125, and travel time was billed at half the regular rate.

practice in the state of New York since 2011. Since 2008, his practice has consisted primarily of wage-and-hour litigation, and he has second chaired several wage and hour trials in federal court. He is also admitted to practice in the state of New Jersey, as well as having been admitted to practice in the Southern and Eastern Districts of New York, the District of New Jersey, and the Eastern District of Michigan.

These rates are well within the norm of billing rates for cases of this nature in this district. See, e.g., *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 597 (S.D.N.Y. 2012) ("Courts in this district have determined in recent cases that the range of appropriate fees for experienced civil rights and employment law litigators is between $250 and $450" per hour (citations omitted)); *Kadden v. VisuaLex, LLC*, 2012 WL 6097656, at *2 (S.D.N.Y. Dec. 6, 2012) (finding rate of $375 per hour to be reasonable for a "well-respected solo practitioner with approximately twenty-five years of legal experience with a focus on labor and employment law and litigation"); *Tackie v. Keff Enterprises LLC*, 2014 WL 4626229, at *7 (S.D.N.Y. Sept. 16, 2014) (approving of requested rate of $400 per hour for "2003 graduate of Hastings College of Law with over ten years of experience specializing in wage and hour litigation"). And, indeed, we have been awarded fees of precisely the above rates by Judge Broderick in *Severino v. 436 West LLC, et al.*, 13-cv-3096 (VSB), Docket Entry 80 (October 28, 2016) and Judge Bricetti in *Lu v.. Nails by Ann, Inc., et al.*, 15-cv-8906 (VB), Docket Entry 48 (April 19, 2018), and Judge Torres in *Perez-Luna v. Ageha Japanese Fusion, Inc., et al.*, 16-cv-6040 (AT), Docket Entry 84 (September 28, 2018), and Judge Oetken in *Zhu v. Salaam Bombay, Inc., at al.*, 16-CV-4091 (JPO), 2019 WL 76706 (January 2, 2019). And in the Eastern District, where the rates are a bit lower, we were recently awarded fees of $375 and $325 in a wage and hour case, *Fabre et al. v. Highbury Concrete Inc., et al.*, 2018 WL 2389719 (N.Y.E.D. May 24, 2018).

Finally, we point out that, consistent with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), this Agreement does not contain a confidentiality provision or general release, and the non-disparagement provision carves out an exception for truthful statements.

For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

Very truly yours,

David Stein

Enc.

cc: Ken Maeng, Esq. (via ECF)